RACHELE R. BYRD (SBN 190634)
MARISA C. LIVESAY (SBN 223247)
BRITTANY N. DEJONG (SBN 258766)
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
byrd@whafh.com
livesay@whafh.com
dejong@whafh.com

*Attorneys for Plaintiff*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELAINE WANG,<br><br>Plaintiff,<br><br>v.<br><br>DERMIRA, INC., EUGENE A. BAUER, M.D., DAVID E. COHEN, M.D., M.P.H., FRED CRAVES, PH.D., MATTHEW FUST, HALLEY E. GILBERT, ESQ., MARK MCDADE, JAKE NUNN, WILLIAM RINGO, KATHLEEN SEBELIUS, THOMAS G. WIGGANS,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Elaine Wang ("Plaintiff"), by her attorneys, makes the following allegations against Dermira, Inc. (sometimes referred to herein as "Dermira" or the "Company") and the members of the board of directors of Dermira (the "Board" or "Individual Defendants," along with Dermira, collectively referred to as the "Defendants"), for their violations of Sections 14(e), 14(d) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d), 78t(a), SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed acquisition (the "Proposed Transaction") of Dermira by affiliates of Eli Lilly and Company ("Eli Lilly"). The allegations in this complaint are based on the personal knowledge of Plaintiff as to herself and on information and belief (including the investigation of counsel and review of publicly available information) as to all other matters stated herein.

## INTRODUCTION

1. This is an action brought by Plaintiff against Dermira and the members Dermira board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Dermira by affiliates of Eli Lilly.

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on January 22, 2020 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Solicitation Statement recommends that Company stockholders tender their shares in support of a proposed transaction (the "Proposed Transaction") whereby Dermira will be acquired by Eli Lilly through its wholly-owned subsidiary Bald Eagle Acquisition Corporation (the "Merger Sub"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Dermira common share issued and outstanding will be converted into the right to receive $18.75 per share in cash (the "Merger Consideration"). In accordance with the Merger Agreement, Merger Sub commenced a tender offer to acquire all of Dermira's outstanding common stock and will expire on February 19, 2020.

3. Defendants have now asked Dermira's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act. Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Dermira's financial projections relied upon by the Company's financial advisors, Citigroup Global Markets Inc. ("Citigroup") and SVB Leerink LLC ("SVB Leerink") in their financial analyses; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Centerview. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as Dermira stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Dermira's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Dermira is headquartered in this District.

**PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of Dermira common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Eugene A. Bauer, M.D. has served as a member of the Board since 2010 and is a co-founder and Chief Medical Officer of the Company.

11. Individual Defendant David E. Cohen, M.D., M.P.H. has served as a member of the Board since 2014.

12. Individual Defendant Fred Craves, Ph.D. has served as a member of the Board since 2010.

13. Individual Defendant Matthew Fust has served as a member of the Board since 2014.

14. Individual Defendant Halley E. Gilbert, Esq. has been a member of the Board since 2019.

15. Individual Defendant Mark McDade has served as a member of the Board since 2014.

16. Individual Defendant Jake Nunn has served as member of the Board since 2011.

17. Individual Defendant William Ringo has served as member of the Board since 2014.

18. Individual Defendant Kathleen Sebelius has served as member of the Board since 2015.

19. Individual Defendant Thomas G. Wiggans has served as member of the Board since 2010, and is a co-founder of Dermira and the Company's Chief Executive Officer and Chairman of the Board.

20. Defendant Dermira is incorporated in Delaware and maintains its principal offices at 275 Middlefield Road, Suite 150, Menlo Park, CA 94025. The Company's common stock trades on the NASDAQ Global Select Market under the symbol "DERM."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

23. Dermira, a biopharmaceutical company, develops and commercializes therapies for patients with dermatologic diseases in the United States. The Company offers QBREXZA, a topical once-daily anticholinergic cloth for the treatment of primary axillary hyperhidrosis in adult and pediatric patients nine years of age and older. It also develops lebrikizumab, a novel injectable humanized monoclonal antibody targeting interleukin 13 that is in Phase IIb clinical trial for the treatment of moderate-to-severe atopic dermatitis; and early-stage research and development programs in other areas of dermatology. Dermira has a right of first negotiation agreement with Maruho Co., Ltd. to develop and commercialize glycopyrronium tosylate for the treatment of hyperhidrosis in Japan; an agreement with F. Hoffmann-La Roche Ltd and Genentech, Inc. to develop and commercialize lebrikizumab; and a development and commercialization agreement with UCB Pharma S.A. to develop Cimzia for the treatment of psoriasis. The Company was formerly known as Skintelligence, Inc. and changed its name to Dermira, Inc. in September 2011. Dermira was founded in 2010 and is headquartered in Menlo Park, California.

24. On January 10, 2020, the Company and Eli Lilly jointly announced the Proposed Transaction:

> INDIANAPOLIS and MENLO PARK, Calif., Jan. 10, 2020 /PRNewswire/ -- Eli Lilly and Company (NYSE: LLY) and Dermira, Inc. (NASDAQ: DERM) today announced a definitive agreement for Lilly to acquire Dermira for $18.75 per share, or approximately $1.1 billion, in an all-cash transaction. Dermira is a biopharmaceutical company dedicated to developing new therapies for chronic skin conditions.
>
> The acquisition will expand Lilly's immunology pipeline with the addition of lebrikizumab, a novel, investigational, monoclonal antibody designed to bind IL-13 with high affinity that is being evaluated in a Phase 3 clinical development program for the treatment of moderate-to-severe atopic dermatitis in adolescent and adult patients, ages 12 years and older. Lebrikizumab was granted Fast

Track designation from the U.S. Food and Drug Administration (FDA) in December 2019. The acquisition of Dermira will also expand Lilly's portfolio of marketed dermatology medicines with the addition of QBREXZA® (glycopyrronium) cloth, a medicated cloth approved by the FDA for the topical treatment of primary axillary hyperhidrosis (uncontrolled excessive underarm sweating).

"People suffering from moderate-to-severe atopic dermatitis have significant unmet treatment needs, and we are excited about the potential that lebrikizumab has to help these patients," said Patrik Jonsson, Lilly senior vice president and president of Lilly Bio-Medicines "The acquisition of Dermira is consistent with Lilly's strategy to augment our own internal research by acquiring clinical phase assets in our core therapeutic areas and leveraging our development expertise and commercial infrastructure to bring new medicines to patients. This acquisition provides an opportunity to add a promising Phase 3 immunology compound for atopic dermatitis, while also adding an approved dermatology treatment for primary axillary hyperhidrosis. We look forward to completing the acquisition and continuing Dermira's excellent work."

"Since Dermira's inception, we have been focused on applying strong science to medical dermatology with the goal of finding new ways to treat some of the most common skin conditions that affect millions of people every year," said Tom Wiggans, chairman and chief executive officer at Dermira. "We are pleased that Lilly has recognized the progress we have made and the opportunities for lebrikizumab and QBREXZA. We share with Lilly a common interest in helping patients through the development of innovative treatments and believe that patients and physicians will benefit from the resources that Lilly can bring to maximize the potential of our programs. We also believe this proposed transaction is in the best interests of Dermira and our stockholders and affirms the dedication and important groundwork established by Dermira's talented employees since the founding of the company nearly 10 years ago."

Under the terms of the agreement, Lilly will commence a tender offer to acquire all outstanding shares of Dermira, Inc. for a purchase price of $18.75 per share in cash, or approximately $1.1 billion. The transaction is not subject to any financing condition and is expected to close by the end of the first quarter of 2020, subject to customary closing conditions, including receipt of required regulatory approvals and the tender of a majority of the outstanding shares of Dermira's common stock. Following the successful closing of the tender offer, Lilly will acquire any shares of Dermira that are not tendered into the tender offer through a second-step merger at the tender offer price.

The purchase price represents a premium of approximately 86 percent to the 60-day volume-weighted average trading price of Dermira's stock ending on January 9, 2020, the last trading day before the announcement of the transaction. Dermira's Board of Directors unanimously recommends that Dermira's stockholders tender their shares in the tender offer. Additionally, certain Dermira stockholders, beneficially owning approximately 13 percent of Dermira's outstanding common stock, have agreed to tender their shares in the tender offer.

This transaction will be reflected in Lilly's financial results and financial guidance according to Generally Accepted Accounting Principles (GAAP). Lilly will provide an update to its 2020 financial guidance, including the expected impact from the acquisition of Dermira, as part of its fourth-quarter and full-year 2019 financial results announcement on January 30, 2020.

For Lilly, Evercore is acting as the exclusive financial advisor and Weil, Gotshal & Manges LLP is acting as legal advisor in this transaction. For Dermira, Citi is acting as lead financial advisor, SVB Leerink is acting as financial advisor, and Fenwick & West LLP is acting as legal advisor.

**About lebrikizumab**

Lebrikizumab is a novel, investigational, monoclonal antibody designed to bind IL-13 with very high affinity, specifically preventing the formation of the IL-13Rα1/IL-4Rα heterodimer complex and subsequent signaling, thereby inhibiting the biological effects of IL-13 in a targeted and efficient fashion. IL-13 is believed to be a central pathogenic mediator that drives multiple aspects of the pathophysiology underlying the range of signs and symptoms of atopic dermatitis by promoting type 2 inflammation and mediating its effects on tissue, resulting in skin barrier dysfunction, itch, skin thickening and skin pain.

**About QBREXZA® (glycopyrronium) cloth**

QBREXZA (pronounced kew brex' zah) is an anticholinergic indicated for topical treatment of primary axillary hyperhidrosis in adult and pediatric patients 9 years of age and older. QBREXZA is applied directly to the skin and is designed to block sweat production by inhibiting sweat gland activation. For more information visit www.QBREXZA.com.

25. It is therefore imperative that Dermira's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B. <u>The Materially Incomplete and Misleading Solicitation Statement</u>**

26. On January 22, 2020, Dermira filed the Solicitation Statement with the SEC in connection with the Proposed Transaction. The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

27. The Proxy Statement fails to provide material information concerning financial projections by Dermira management and relied upon by the financial advisors in their analyses. The Solicitation Statement discloses management-prepared financial projections for the Company which are materially misleading. The Solicitation Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Solicitation Statement should have, but fails to provide, certain information in the projections that Dermira management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28. For the Projections, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2020 through 2034: (a)

Adjusted Net Revenue, (b) Adjusted Cost of Sales, (c) Adjusted Total Operating Expenses, and (d) Changes in Net Working Capital and Other Adjustments, but fails to provide line items used to calculate these metrics or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Solicitation Statement at 42-43.

29. The Projections also omitted the risk adjustments made to take into account the Company's estimate of the probability of success of the drug lebrikizumab. Solicitation Statement at 41. Without this information, stockholders are unable to evaluate how the adjustments impact the Projections.

30. With respect to Citigroup's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the terminal values for the Company; (ii) the basis for applying a perpetual growth rate ranging from -30.00% to -20.0%; (iii) the basis for applying the range of discount rates from 11.3% to 14.1%; (iv) the number of fully diluted shares of common stock outstanding as of January 9, 2020. Solicitation Statement at 37.

31. With respect to SVB Leerink *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the terminal values for the Company; (ii) the basis for applying a perpetual growth rate ranging from -30.00% to -20.0%; (iii) the basis for applying the range of discount rates from 11.0% to 13.0%; (iv) the number of fully diluted shares of common stock outstanding as of January 9, 2020. Solicitation Statement at 37-38.

32. In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I
**Violations of Section 14(e) of the Exchange Act**
**(Against All Defendants)**

33. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

35. Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

36. The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

37. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

38. The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their

shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

39. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

40. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT II
## Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder (Against All Defendants)

41. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

42. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

43. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

44. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

45. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer,

they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

46. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**COUNT III**
**Violations of Section 20(a) of the Exchange Act**
**(Against the Individual Defendants)**

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of Dermira within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Dermira, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Dermira, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Dermira, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

51. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: January 28, 2020

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: */s/ Rachele R. Byrd*
RACHELE R. BYRD
MARISA C. LIVESAY
BRITTANY N. DEJONG
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
byrd@whafh.com
livesay@whafh.com
dejong@whafh.com

Of Counsel:

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
GLORIA KUI MELWANI
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114

***Counsel for Plaintiff***

Dermira: 26250